UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

JAYKESHIA THORNTON,

     Plaintiff,

v.                                       Case No:  2:14-cv-236-FtM-MRM

COMMISSIONER OF SOCIAL
SECURITY,

     Defendant.

_____

## OPINION AND ORDER

Plaintiff, Jaykeshia Thornton, seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for Supplemental Security Income ("SSI").  The Commissioner filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), the parties filed legal memoranda in support of their positions, and Plaintiff filed a reply to Defendant's memorandum. For the reasons set out herein, the decision of the Commissioner is **AFFIRMED** pursuant to 42 U.S.C. § 405(g).

    **I.**    **Social Security Act Eligibility, Standard of Review, Procedural History, and the ALJ's Decision**

    **A.  Social Security Act Eligibility**

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months.  42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382(a)(3)(A); 20 C.F.R. §§ 404.1505, 416.905.  The impairment must be severe, making the claimant unable to do his previous work,

or any other substantial gainful activity which exists in the national economy. 42 U.S.C. §§ 423(d)(2), 1382(a)(3); 20 C.F.R. §§ 404.1505-404.1511, 416.905-416.911.

**B.  Standard of Review**

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405 (g).  "Substantial evidence is more than a scintilla and is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.  Even if the evidence preponderated against the Commissioner's findings, we must affirm if the decision reached is supported by substantial evidence." *Crawford v. Comm'r*, 363 F.3d 1155, 1158 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1439 (11th Cir. 1997)); *Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990).  In conducting this review, this Court may not reweigh the evidence or substitute its judgment for that of the ALJ, but must consider the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision.  *Martin v. Sullivan*, 894 F.2d 1329, 1330 (11th Cir. 2002); *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995). However, the District Court will reverse the Commissioner's decision on plenary review if the decision applied incorrect law, or if the decision fails to provide sufficient reasoning to determine that the Commissioner properly applied the law.  *Keeton v. Dep't. of Health & Human Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994).  The Court reviews de novo the conclusions of law made by the Commissioner of Social Security in a disability benefits case.  42 U.S.C. § 405(g).

The ALJ must follow five steps in evaluating a claim of disability.  20 C.F.R. §§ 404.1520, 416.920.  At step one, the claimant must prove that he is not undertaking substantial gainful employment.  *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001); *see* 20 C.F.R. § 404.1520(a)(4)(i).  If a claimant is engaging in any substantial gainful activity, he will be found not disabled.  20 C.F.R. § 404.1520(a)(4)(i).

At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments. *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(ii). If the claimant's impairment or combination of impairments does not significantly limit his physical or mental ability to do basic work activities, the ALJ will find that the impairment is not severe, and the claimant will be found not disabled. 20 C.F.R. § 1520(c).

At step three, the claimant must prove that his impairment meets or equals one of impairments listed in 20 C.F.R. Pt. 404, Subpt. P. App. 1. *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(iii). If he meets this burden, he will be considered disabled without consideration of age, education and work experience. *Doughty*, 245 F.3d at 1278.

At step four, if the claimant cannot prove that his impairment meets or equals one of the impairments listed in Appendix 1, he must prove that his impairment prevents him from performing his past relevant work. *Id.* At this step, the ALJ will consider the claimant's RFC and compare it with the physical and mental demands of his past relevant work. 20 C.F.R. §§ 1520(a)(4)(iv), 1520(f). If the claimant can still perform his past relevant work, then he will not be found disabled. *Id.*

At step five, the burden shifts to the Commissioner to prove that the claimant is capable of performing other work available in the national economy, considering the claimant's RFC, age, education, and past work experience. *Doughty*, 245 F.3d at 1278; 20 C.F.R. § 1520(a)(4)(v). If the claimant is capable of performing other work, he will be found not disabled. *Id.* In determining whether the Commissioner has met this burden, the ALJ must develop a full and fair record regarding the vocational opportunities available to the claimant. *Allen v. Sullivan*, 880 F.2d 1200, 1201 (11th Cir. 1989). There are two ways in which the ALJ may make this determination. The first is by applying the Medical Vocational Guidelines ("the

Grids"), and the second is by the use of a vocational expert. *Phillips v. Barnhart*, 357 F.3d 1232, 1239 (11th Cir. 2004). Only after the Commissioner meets this burden does the burden shift back to the claimant to show that he is not capable of performing the "other work" as set forth by the Commissioner. *Doughty v. Apfel*, 245 F.3d at 1278 n.2.

### C. Procedural History

On October 8, 2010, Plaintiff filed an application for SSI alleging disability beginning March 1, 2009. (Tr. 112). Plaintiff subsequently amended her alleged disability onset date to November 13, 2009. (Tr. 42-43). Plaintiff's application was denied initially on November 17, 2010, and on reconsideration on February 22, 2011. (Tr. 75, 83). A hearing was held before Administrative Law Judge Larry J. Butler (the "ALJ") on June 7, 2012. (Tr. 39-64). The ALJ issued an unfavorable decision on October 15, 2012. (Tr. 21). On April 1, 2014, the Appeals Council denied Plaintiff's request for review. (Tr. 1). Plaintiff filed a Complaint (Doc. 1) in the United States District Court on April 25, 2014.

### D. Summary of the ALJ's Decision

At step one of the sequential evaluation, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the date of Plaintiff's application date, October 8, 2010. (Tr. 14). At step two, the ALJ found that Plaintiff suffered from the following severe impairments: status post L4-L5 and L5-S1 decompression, anterior lumbar interbody fusion surgery, lumbago, lumbar radiculopathy, lumbar failed back surgery syndrome, lumbar myofascial pain syndrome, and cervicalgia. (Tr. 14). At step three, the ALJ determined that Plaintiff did not have an impairment or combination of impairments that meets or medically equals the severity of any of the listed impairments in "20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926)." (Tr. 16).

Before proceeding to step 4, the ALJ determined that Plaintiff has the residual functional capacity ("RFC") to:

> perform the full range of medium work as defined in 20 CFR 416.967(c). The claimant is able to occasionally lift/carry 50 pounds, frequently lift/carry 25 pounds, stand/walk about 6 hours in an 8-hour workday, sit about 6 hours in an 8-hour workday, and has unlimited ability to push and pull including operation of hand and/or foot controls. She can frequently climb ramps, stairs, ladders, ropes, and scaffolds, balance, stoop, kneel, crouch, and crawl. She should avoid concentrated exposure to noise and hazards such as moving machinery and unprotected heights.

(Tr. 16). At step four, the ALJ found that Plaintiff is capable of performing her past relevant work as a security guard. (Tr. 20). The ALJ explained that this work does not require the performance of work-related activities precluded by Plaintiff's RFC. (Tr. 20). The ALJ concluded that Plaintiff has not been under a disability, as defined in the Social Security Act, since October 8, 2010, the date her application was filed. (Tr. 20).

## II.   Analysis

Plaintiff raises three issues on appeal: (1) whether the ALJ erred by ignoring evidence that undermines his finding that Plaintiff improved after her surgery; (2) whether the ALJ erred in his assessment of the medical opinions of record; and (3) whether the ALJ erred in finding Plaintiff only partially credible. The Court addresses each issue separately below.

### a)   Whether the ALJ erred by ignoring evidence that undermines his finding that Plaintiff improved after her surgery.

Plaintiff contends that the ALJ rendered his decision solely upon the evidence showing Plaintiff's improvement after surgery. (Doc. 17 p. 16). Plaintiff argues that the ALJ erred by focusing on a scintilla of evidence supporting his finding that Plaintiff improved after surgery, while ignoring the evidence that after surgery her impairments persisted and continued to cause chronic pain that causes much greater limitations than the ALJ included in his RFC finding.

(Doc. 17 p. 15).  In particular, Plaintiff argues that it was legally improper for the ALJ to focus

on Plaintiff's normal MRI and EMG/NCS findings to the exclusion of the abnormal findings

showing disc disruption, neural foraminal compression, and radiculitis.  (Doc. 17 p. 17).

Plaintiff further argues that the ALJ erred by omitting evidence in his opinion that is contrary to

his decision, including the Medical Functional Capacity Assessment performed by Craig

Lichtblau, M.D., the examination performed by Anthony Rogers, M.D., in March 2011, and the

objective findings by Stuart Krost, M.D., in September 2011 and March 2012.  (Doc. 17 p. 18).

        In response, Defendant argues that the ALJ assessed the record as a whole in reaching his

decision and that, contrary to Plaintiff's contentions, considered evidence of Plaintiff's

complaints of pain, limited range of motion, mildly decreased strength, positive straight leg raise

testing, tenderness, muscle spasms, the February 2012 MRI, and updated EMG/NCS testing

revealing chronic right radiculitis.  (Doc. 19 p. 4).  Defendant argues that while abnormal clinical

findings were present throughout the record, the ALJ found that they were consistent with the

ability to perform the range of medium work he determined in his RFC finding as evidence in the

record revealed Plaintiff was exaggerating her pain.  (Doc. 19 p. 9).

        In his decision, the ALJ explained that his determination that Plaintiff was not disabled

was due, in part, to the fact that Plaintiff's condition improved after she underwent an anterior

L4-L5 and L5-S1 decompression, anterior lumbar interbody fusion surgery on February 9, 2010.

(Tr. 18).  The ALJ stated:

> The claimant did undergo surgery for the alleged impairment, which
> certainly suggests that the symptoms were genuine.  While that fact would
> normally weigh in the claimant's favor, it is offset by the fact that the
> record reflects that the surgery was generally successful in relieving the
> symptoms.   After the surgery, treatment notes indicate that claimant
> reported doing extremely well.   She reported that her pain was
> significantly reduced and that her right leg radicular symptoms felt prior
> to the surgery had lessened significantly.  She started to increase activities

> of daily living and range of motion.  On examination, muscle strength testing was slightly decreased in the right quadriceps 4/5 compared to 5/5 in the left.  Sensation was equal and intact in the lower extremities.  Range of motion with 60-70 degrees forward flexion was with minimum discomfort.

(Tr. 18).

The ALJ further explained that Plaintiff was doing much better on medication and that her pain was relieved to the extent that she stopped taking pain medication altogether in April 2010, suggesting that Plaintiff's symptoms were not as limiting as alleged in connection with her application for SSI.  (Tr. 18).  The ALJ noted that Plaintiff presented to Dr. Craig Lichtblau in August 2010 with reports of constant lower back pain with radiation to bother her lower extremities with numbness and tingling in bother feet, and was taking Vicodin and Advil as needed for pain.  (Tr. 18).  The ALJ acknowledged that despite physical therapy, Plaintiff reported low back pain and rated the pain as nine out of ten in October 2010, and reported that Vicodin and Motrin did not help well for pain control.  (Tr. 18).

Specifically addressing Plaintiff's complaints of continuing back pain after her surgery, the ALJ stated,

> The record overall does not support claimant's new complaints of reoccurring low back pain with radiation.  An updated MRI does not support claimant's extreme description of pain as the MRI revealed no recurrent disc herniation at the L4-L5 and L5-S1 level and the canals foramina were open.  There was a L3-4 disc disruption with neural foraminal compression.  An updated EMG/NCS test revealed chronic right L5 radiculitis.  However, as previously noted, physical therapy, notes indicate that claimant reported no increasing pain or pain with treatment.  Notes further indicated that she participated fully, was doing well, and improving.  Pain management records indicate claimant reported having good pain control with prescribed medication without any side effects.

(Tr. 19).

An ALJ's decision is not supported by substantial evidence if the ALJ focuses upon one aspect of the evidence and disregards other parts contrary to his findings. *McCruter v. Bowen*, 791 F.2d 1544, 1548 (11th Cir. 1986). Here, the Court finds that the ALJ did not err by failing to adequately consider the record as a whole in reaching his decision. Contrary to Plaintiff's claim, the ALJ did not ignore the medical evidence showing that Plaintiff's back pain persisted after her anterior L4-L5 and L5-S1 decompression, anterior lumbar interbody fusion surgery on February 9, 2010. As noted above, the ALJ specifically acknowledged that Plaintiff reported continuing back pain after her surgery beginning in August 2010. Further, the ALJ specifically acknowledged that objective medical testing revealed abnormal findings by noting that the November 2011 EMG/NCS revealed that Plaintiff's chronic right L5 radiculopathy persisted and that the February 2012 MRI revealed L3-4 disc disruption with neural foraminal compression. Keeping this medical evidence in mind, the ALJ nevertheless found that Plaintiff possessed the RFC to perform the limited range of medium work he assessed.

Plaintiff's contention that remand is proper because the ALJ failed to consider evidence in the record from Dr. Lichtblau, Dr. Krost, and Dr. Rogers is unavailing. While Plaintiff is correct that the ALJ does not mention the particulars of Dr. Lichtblau's opinion concerning Plaintiff's RFC, the ALJ nevertheless analyzed Dr. Lichtblau's opinion and devoted an entire paragraph explaining his reasoning for according Dr. Lichtblau's opinion no weight. (Tr. 20). As explained below, substantial evidence supports the ALJ's treatment of Dr. Lichtblau's opinion.

Likewise, the ALJ's opinion demonstrates that the ALJ considered medical evidence from Dr. Krost, including objective medical evidence that revealed chronic right L5 radiculopathy. (Tr. 19). Despite Plaintiff's argument that the ALJ incorrectly took away from

Dr. Krost's notes that Plaintiff had good pain control, the record shows that Dr. Krost noted that "Plaintiff reports that she has been having good pain control with the change to the Opana ER for pain control." (Tr. 602). Plaintiff did describe her pain as a ten out of ten at worst, a five out of ten at best, and an eight out of ten at present during her follow-up visit to Dr. Krost, but it is clear from the ALJ's opinion, as discussed below, that the ALJ found such complaints of pain not credible.

Plaintiff is correct that the ALJ's opinion fails to mention the treatment notes from Plaintiff's visit to Dr. Rogers[1] in March 2011. This failure, however, does not warrant remand, as there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision. *Dyer v. Barnhart*, 395 F.3d 1206, 1211 (11th Cir. 2005). The notes from Plaintiff's initial consultation indicate that Plaintiff had good range of motion of the cervical spine, with tenderness, spasm, and facial grimacing on examination. (Tr. 493). Plaintiff's thoracic spine was found to be unremarkable. (Tr. 493). Plaintiff's lumbar range of motion was decreased on extension and flexion, but straight leg raise was negative, reflexes were intact, muscle strength was appropriate, and Plaintiff's gait was normal. (Tr. 493). These findings are consistent with the medical evidence the ALJ specifically addressed in fashioning his RFC opinion and do not undermine the ALJ's decision.

Plaintiff contends that the ALJ rendered his decision solely on the medical records showing Plaintiff improved after her surgery. (Doc. 17 p. 16). While the ALJ clearly gave great

---

[1] While Plaintiff refers to the treatment notes from Palm Beach Pain Management as being from "Dr. Rogers" there is no evidence that such is the case. The medical evidence Plaintiff refers to as from Dr. Rogers contains an illegible signature above a signature block which lists Anthony Rogers, M.D., George Tuttle, M.D., or Harsha Rajashekar, D.O. The Court, for simplicity sake, will refer to the medical evidence from Palm Beach Pain Management as being from Dr. Rogers as Plaintiff alleges.

weight to the medical evidence showing Plaintiff was doing "extremely well" after her surgery and had stopped taking pain medication (Tr. 401), the ALJ's decision was not based on Plaintiff's post-surgery improvement alone.  The ALJ's decision was also based on evidence that undermined Plaintiff's complaints of disability.  For example, the ALJ based his decision on the fact that Plaintiff received unemployment benefits in all four quarters of 2010, that Plaintiff had stopped working for reasons not related to her allegedly disabling impairments, and evidence in the record that Plaintiff was malingering or misrepresenting the extent of her limitation.  (Tr. 19-20).  As will be explained below, the ALJ properly relied on such considerations in reaching his decision.

While Plaintiff disagrees with the ALJ's ultimate determination that Plaintiff is not disabled, the ALJ's decision shows that the ALJ did not ignore the medical evidence of record that was contrary to his RFC finding.  Accordingly, the Court will not reverse and remand on such grounds.

**b)  Whether the ALJ erred in his assessment of the medical opinions of record.**

Plaintiff argues that the ALJ erred in rejecting the opinion of Plaintiff's treating physician, Dr. Lichtblau, and in adopting the opinion of nonexamining consultant, Thomas Renny, D.O.  (Doc. 17 p. 22).  Plaintiff contends that Dr. Renny's opinion must not be accorded controlling weight because he is not a treating physician, and cannot be used as good cause to reject Dr. Lichtblau's opinion.  (Doc. 17 p. 21).  In addition, Plaintiff argues that the ALJ erred in according great weight to psychological consultative examiner, Paula Bowman, Psy.D., regarding both her psychological opinions and her observations of Plaintiff's physical functioning.  (Doc. p. 21).

In response, Defendant argues that the ALJ properly assessed the medical opinions in the record and substantial evidence supports his findings.  (Doc. 19 p. 9-10).  Defendant contends that Dr. Lichtblau was not Plaintiff's treating physician whose opinion was entitled to controlling weight because Dr. Lichtblau only examined Plaintiff twice.  (Doc. 19 p. 11).  Defendant argues that the ALJ did not reject Dr. Lichtblau's opinion on the basis of Dr. Renny's opinion, and did not base his RFC finding solely on Dr. Renny's opinion, but on the record as a whole.  (Doc. 19 p. 13).  Finally, Defendant argues that the ALJ properly considered the opinion of Dr. Bowman. (Doc. 19 p. 14-15).

The Eleventh Circuit has held that whenever a physician offers a statement reflecting judgments about the nature and severity of a claimant's impairments, including symptoms, diagnosis, and prognosis, what the claimant can still do despite his or her impairments, and the claimant's physical and mental restrictions, the statement is an opinion requiring the ALJ to state with particularity the weight given to it and the reasons therefor.  *Winschel v. Comm'r of Soc. Sec.,* 631 F.3d 1176, 1178-79 (11th Cir. 2011).  Without such a statement, "it is impossible for a reviewing court to determine whether the ultimate decision on the merits of the claim is rational and supported by substantial evidence."  *Id.* (citing *Cowart v. Shweiker,* 662 F.2d 731, 735 (11th Cir. 1981)).  The opinions of treating physicians are entitled to substantial or considerable weight unless good cause is shown to the contrary.  *Phillips v. Barnhart,* 357 F.3d 1232, 1240 (11th Cir. 2004).  The Eleventh Circuit has held that good cause exists when the:  "(1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's opinion was conclusory or inconsistent with the doctor's own medical records."  *Id.*  Where an ALJ articulates specific reasons for failing to accord the opinion of a treating or examining physician controlling weight and those reasons are supported by

- 11 -

substantial evidence, there is no reversible error. *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir. 2005).

The Court begins with the opinion of Dr. Lichtblau. The record shows that Plaintiff first presented to Dr. Lichtblau on August 2, 2010. (Tr. 436). Dr. Lichtblau's consultation notes indicate that Plaintiff complained of constant lower back pain which radiated into both of Plaintiff's lower extremities with numbness and tingling to both of her feet. (Tr. 437). Plaintiff reported that sitting for too long, standing for too long, bending, twisting, turning, lifting, pushing, and pulling exacerbated her pain. (Tr. 437). Plaintiff stated that she had been experiencing difficulty sleeping secondary to the pain waking her up at night. (Tr. 437). Plaintiff stated that she had continued to experience abdominal pain. (Tr. 437). Dr. Lichtblau's examination revealed that Plaintiff was in moderate distress, had limited lumbar range of motion at 15 degrees extension and 15 degrees lateral flexion to the left and right; tenderness to light palpitation over her lumbar paraspinal muscle with palpable muscle spasm across her quadratus lumborum muscles bilaterally; normal gait; positive straight leg raise at 60 degrees seated bilaterally; and 1+/4 deep tendon reflexes throughout. (Tr. 439). Dr. Lichtblau diagnosed the following: (1) lumbar myofascial pain syndrome; (2) history of L4-L5 circumferential disc bulge at L3-L4 indicated on 06/11/08 MRI; (3) history of chronic right L5 radiculopathy and paravertebral muscle spasm indicated on EMG/nerve conduction study performed by Dr. Krost on 04/07/09; (4) status post anterior lumbar interbody fusion at L4-L5 and L5-S1 performed by Dr. Gomez on 02/09/10; and (5) acute functional decline secondary to chronic pain and depression. (Tr. 450). Dr. Lichtblau recommended that Plaintiff be placed in a coordinated outpatient Physical Medicine Program three times a week for four weeks, with superficial heat,

deep heat, therapeutic massage, and therapeutic exercises progressing to a strengthening program in order to regain her maximum function.  (Tr. 450).

On August 8, 2010, Plaintiff underwent a physical therapy evaluation by Dr. Lichtblau that revealed restricted lumbar range of motion, tight paralumbar soft-tissue and trunk tissue, severe paralumbar spasm to palpitation, and positive bilateral slump test with pain down her lower extremities and buttocks.  (Tr. 542-43).  Plaintiff received physical therapy during August and September 2010, which she tolerated without complaints of increased pain, but her pain persisted at 6-7 out of 10.  (Tr. 534, 536, 538, 540).

In October 2010, Plaintiff returned to Dr. Lichtblau for a follow-up evaluation.  (Tr. 452).  Dr. Lichtblau noted that Plaintiff continued to complain about her back pain, describing it as a constant 9 out of 10.  (Tr. 452).  Plaintiff stated that the pain radiated into both of her lower extremities with numbness and tingling to both of her feet, which is exacerbated by sitting for too long, standing for too long, bending, twisting, turning, and lifting.  (Tr. 452).  Plaintiff reported that Vicodin and Motrin were not working well to control her pain.  (Tr. 452).  Dr. Lichtblau found that Plaintiff had reached the point of maximum medical improvement in regard to continued non-operative care and recommended that Plaintiff undergo a Medical Functional Capacity Assessment in order to specifically determine her functional restrictions.  (Tr. 455).

Dr. Lichtblau performed a Medical Functional Capacity Assessment, which revealed that Plaintiff had limitations in reaching, lifting, and bending with weight below 10 pounds, in fine motor activity, and decreased right hand strength.  (Tr. 456-60).  Dr. Lichtblau found that Plaintiff was cooperative and followed instructions throughout the Medical Functional Capacity Assessment, and that there was a close correlation between Plaintiff's subjective complaints of pain, limited spinal mobility, general weakness, general decreased endurance, and her functional

ability.  (Tr. 460).  Dr. Lichtblau determined that Plaintiff did not have the functional capacity to

work 4 hours per day, should be in a setting that allowed breaks to change from sit-to-

stand/stand-to-sit frequently, at will for positional comfort; could sit, stand, and walk as

tolerated; and should avoid bending, kneeling, squatting, climbing, unprotected heights, running,

and jumping.  (Tr. 460).  Dr. Lichtblau found that Plaintiff's lifting should remain at the

sedentary of 10 pounds or less infrequently.  (Tr. 460).  Dr. Lichtblau found that Plaintiff would

experience acute, intermittent exacerbations of chronic pain and discomfort that would cause bad

days and missed days of work.  (Tr. 460).  Dr. Lichtblau concluded that Plaintiff would not be

able to maintain gainful employment in the competitive open labor market or in a sheltered

environment with a benevolent employer, secondary to acute, intermittent exacerbations of

chronic pain and discomfort.  (Tr. 460).

 In his opinion, the ALJ addressed Dr. Lichtblau's opinion as follow:

> The undersigned does not accept the opinion from Dr. Lichtblau regarding
> claimant's functional and physical limitations and accords the opinion no
> weight as they are inconsistent with and unsupported by the medical
> evidence of record.  Dr. Lichtbleu [sic] opined that the claimant was not
> capable of maintaining gainful employment, however this opinion is
> unsupported by the objective medical evidence including physical therapy
> notes in which the claimant did not complain of increasing pain, and was
> noted as doing well and participating fully without complaints of pain.
> Furthermore, the opinion is not accepted as it appears to be primarily based
> on claimant's own subjective reports rather than objective medical
> evidence.

(Tr. 20).

 In this case, the Court finds that the ALJ did not err in according no weight to the opinion

of Dr. Lichtblau.  While the parties dispute whether Dr. Lichtblau is a treating physician, the

matter is irrelevant as the Court finds that good cause existed for the ALJ to reject Dr.

Lichtblau's opinion.  As the ALJ noted, Dr. Lichtblau referred Plaintiff to physical therapy

where treatment notes indicated she tolerated treatment without complaints of increased pain and showed improvement. (Tr. 533-40). Dr. Lichtblau noted after both visits from Plaintiff that Plaintiff walked with a normal, unassisted gait and had intact sensation and full muscle strength. (Tr. 454). In addition, Dr. Lichtblau's RFC opinion was based on Plaintiff's subjective reports of pain rather than medical evidence. As will be discussed below, the ALJ found Plaintiff's subjective complaints of pain to be only partially credible, a finding supported by substantial evidence of record.

Contrary to Plaintiff's argument, the ALJ did not reject Dr. Lichtblau's opinion on the basis that it conflicted with Dr. Renny's opinion that Plaintiff had the RFC to occasionally lift and/or carry 50 pounds, frequently lift and/or carry 25 pounds, stand and/or walk about 6 hours in an 8-hour workday, sit about 6 hours in an 8-hour workday, and had an unlimited ability to push/or pull. (Tr. 484). A review of the ALJ's opinion shows that the ALJ did not cite Dr. Renny's opinion to discount Dr. Lichtblau's opinion, and did not base his RFC finding solely on Dr. Renny's opinion. Plaintiff has failed to show the ALJ committed reversible error according great weight to Dr. Renny's opinion.

Likewise, the Court finds that Plaintiff has failed to show the ALJ erred in according great weight to the opinion of Dr. Bowman, a consulting psychologist, set forth in a General Clinical Evaluation on January 31, 2011. (Tr. 467). While Plaintiff is correct that Dr. Bowman was not a licensed psychologist, the record indicates that Dr. Bowman conducted her evaluation of Plaintiff "under the direct supervision of licensed psychologist Cheryl Kasprzak, Psy.D., who met with the claimant and reviewed all the clinical data and raw test scores." (Tr. 470). Although the ALJ refers to the General Clinical Evaluation as "the opinion of Dr. Bowman," the record provides that the report was a joint work of Dr. Bowman and Dr. Kasprzak and reflects

the clinical opinion of the supervising psychologist, Dr. Kasprzak.  (Tr. 470).  Thus, no matter

how the ALJ referred to the opinion, the record shows that it was the opinion of an acceptable

medical source.

Further, while Plaintiff argues that Dr. Bowman, trained in psychology, is not qualified to

rend opinions as to Plaintiff's physical functioning, a review of Dr. Bowman's opinion makes

clear that Dr. Bowman did not provide a medical opinion about Plaintiff's physical condition.

(Tr. 467-70).  Dr. Bowman summarized, "[b]ased on claimant's extreme hesitation in

responding, vagueness, and avoidant and evasive attitude, claimant's reliability is questionable.

She appeared to be in pain/discomfort and had difficulty standing and walking after the

evaluation, however was observed walking outside the building afterwards at a leisurely pace

and had no difficulty getting into the passenger side of an SUV without incident and closed the

door behind her."  (Tr. 469).  Dr. Bowman provided these observations to call into question

Plaintiff's reliability, not to offer a medical opinion.  The Court finds no error in the ALJ's

reliance on these observations.  *See* 20 C.F.R. § 416.913(d)

Substantial evidence supports the weight the ALJ accorded to the opinions of Dr.

Lichtblau, Dr. Renny, and Dr. Bowman.  Accordingly, the Court will not reverse and remand on

the grounds that ALJ erred in his treatment of the opinions of record.

**c)  Whether the ALJ erred in finding Plaintiff only partially credible.**

Plaintiff argues that the ALJ's finding that the medical record only partially supports

Plaintiff's testimony and only partially confirms the subjective severity of her conditions are

unsupported by substantial evidence and the decision must be reversed.  (Doc. 17 p. 23).

Plaintiff contends that the ALJ credibility finding is unsupported by substantial evidence

because: (1) the ALJ ignored examinations that were contrary to his conclusion, (2) the ALJ

- 16 -

improperly relied on the fact that Plaintiff received unemployment benefits during the time

Plaintiff alleges she was disabled, (3) the ALJ improperly relied on Dr. Bowman's opinion that

Plaintiff's reliability is questionable, (4) the ALJ improperly ignored Dr. Bowman's abnormal

mental status examination findings, and (5) the ALJ improperly considered Plaintiff's sporadic

work history, given the ALJ did not acknowledge that Plaintiff was caring for two young

children at home.  (Doc. 17 p. 23-24).

Defendant responds that the ALJ properly assessed Plaintiff's subjective complaints by

reviewing the evidence as a whole, including the clinical findings, Plaintiff's receipt of

unemployment benefits, and evidence of malingering in assessing Plaintiff's subjective

complaints of disabling symptoms.  (Doc. 19 p. 16).

The Eleventh Circuit's three-part pain standard that applies whenever a claimant asserts

disability through testimony of pain or other subjective symptoms requires:  (1) evidence of an

underlying medical condition and either (2) objective medical evidence confirming the severity

of the alleged pain arising from that condition, or (3) that the objectively determined medical

condition is of such a severity that it can be reasonably be expected to cause the alleged pain.

*Foote v. Charter,* 67 F.3d 1553, 1560 (11th Cir. 1995); *Kelly v. Apfel,* 185 F.3d 1211, 1215 (11th

Cir. 1999).  After considering claimant's subjective complaints, the ALJ may reject them as not

credible, and that determination is reviewed for substantial evidence.  *Marbury v. Sullivan,* 957

F.2d 837, 839 (11th Cir. 1992).  If the objective medical evidence does not confirm the severity

of the alleged symptoms, but indicates that the claimant's impairment could reasonably be

expected to produce some degree of pain and other symptoms, the ALJ evaluates the intensity

and persistence of the claimant's symptoms and their effect on his ability to work by considering

the objective medical evidence, the claimant's daily activities, treatment and medications

received, and other factors concerning functional limitations and restrictions due to pain. *See* 20

C.F.R. § 404.1529. "A clearly articulated credibility finding with substantial supporting

evidence in the record will not be disturbed by a reviewing court." *Foote*, 67 F.3d at 1562.

In his opinion, the ALJ made the following observations concerning Plaintiff's

credibility,

> Furthermore, the record also reveals the claimant received unemployment
> benefits in all 4 Quarters of 2010. The state law of Florida requires that a
> person be able and available for work while drawing unemployment and
> be willing to accept suitable work if offered. Section 443.091(d), Fla. Stat.
> In other words, the person must certify that he or she is ready, willing and
> able to work. Claimant testified at hearing that she had looked for work
> in 2010 at various locations. During a consultative examination, she
> admitted to last applying for employment online two months ago (on or
> about November 2010) for a security guard position. This is inconsistent
> with the allegation that the claimant is disabled and unable to work and
> diminishes the credibility of the claimant, especially since during this time
> period she was complaining of extreme back pain.
>
> A review of the claimant's work history shows that the claimant worked
> only sporadically prior to the alleged disability onset date, which raises a
> question as to whether the claimant's continuing unemployment is
> actually due to medical impairments. There is evidence that the claimant
> stopped working for reasons not related to the allegedly disabling
> impairments(s). She reported being laid off in 2009 from her job as a
> security officer.
>
> The undersigned find[s] the claimant is only partially credible at best and
> finds that the claimant's allegations regarding his functional limitations
> are partially credible because the medical records only partially support
> his testimony and the medical evidence of record only partially confirms
> the subjective severity of his conditions. The undersigned notes that the
> record includes statements by doctors suggesting the claimant was
> engaging in possible malingering or misrepresentation. Claimant
> underwent a psychological examination in January 2011 and prior to the
> evaluation, she was observed to be playing checkers with her husband in
> the waiting room. During the evaluation, claimant put her left hand to her
> face, as she looked downward when responding. Each response took at
> least 60 seconds for minimal, if any information. She took approximately
> 60 second to stand after the evaluation and walked slowly with facial
> grimaces of pain/discomfort. Dr. Bowman noted that based on claimant's
> presentation, extreme hesitation in responding, vagueness, and avoidant

- 18 -

and evasive attitude, claimant's reliability is questionable.  She appeared to be in pain/discomfort and had difficulty standing and walking after the evaluation, however was observed walking outside the building afterwards at a leisurely pace and had no difficulty getting into the passenger side of an SUV without incident and closed the door behind her.

(Tr. 19) (ALJ's citations to the record omitted).

In this case, the Court finds that the ALJ's credibility finding is supported by substantial evidence.  First, the ALJ appropriately considered Plaintiff's receipt of unemployment benefits in reaching his decision.  As the ALJ correctly noted in his opinion, a claimant for unemployment benefits must certify on a regular basis that they are available for, able to perform, and would accept suitable work if offered.  Such certifications directly contradict Plaintiff's contention that she was disabled and unable to work.  The inconsistency between certifying that she is willing and able to work to receive unemployment benefits and asserting that she is disabled to receive SSI is an inconsistency appropriate for an ALJ to consider in evaluating the credibility of a claimant.  *See Boyd v. Astrue*, 2011 WL 1259795, at *6-7 (M.D. Fla. Mar. 31, 2011).  Plaintiff contends that the ALJ erred in considering Plaintiff receipt of unemployment benefits because 20 C.F.R. § 416.210(b) required her to apply for unemployment insurance benefits prior to applying for SSI.  This argument is unavailing.  While 20 C.F.R. § 416.210 requires SSI applicants to "apply for all other benefits for which [he or she] may be eligible," and to "do whatever else is needed so that [his or her] eligibility for the other benefits can be determined," they do not require a claimant to be actually eligible and receive unemployment benefits.

Likewise, it was appropriate for the ALJ to consider the fact that Plaintiff admitted that she applied for a job as a security guard during the period of time she alleges she was disabled. 20 C.F.R. § 404.1529(c)(3)(vii) (providing that an ALJ may consider "[o]ther factors concerning [a claimant's] functional limitations and restrictions due to pain and other symptoms").  Here, the

fact that Plaintiff applied for work during a time she alleges she was under a disability undermines her claims of functional impairment preventing her from working.

Finally, the ALJ did not err in considering the observations contained in Dr. Bowman's opinion that Plaintiff was not credible due to the discrepancy between her conduct during her examination and afterwards, when she believed she was not being observed. As noted above, the ALJ properly relied on this section of Dr. Bowman's opinion, not as a medical opinion, but as evidence that Plaintiff was not reliably reporting her condition.

The ALJ clearly articulated his credibility determination which was supported by substantial evidence. Accordingly, the Court will not disturb the ALJ's credibility finding on appeal.

### III.   Conclusion

Upon consideration of the submissions of the parties and the administrative record, the court finds that the decision of the ALJ is consistent with the requirements of law and supported by substantial evidence. The decision of the Commissioner is **AFFIRMED** pursuant to sentence four of 42 U.S.C. § 405(g). The Clerk of the Court is directed to enter judgment consistent with this opinion and, thereafter, to close the file.

**DONE** and **ORDERED** in Fort Myers, Florida on September 29, 2015.

_____
MAC R. MCCOY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:

Counsel of Record
Unrepresented Parties